IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DURELL FITCHETT, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Civil Case No. 1:23-cv-383 (PTG/WEF) |
| ) | |
| BRUCE D. JONES, JR., ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION & ORDER

Durell Fitchett ("Petitioner"), a Virginia inmate proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, challenging his 2014 convictions and sentence in the Circuit Court of Northampton County, Virginia, for second-degree murder and use of a firearm in the commission of a felony. Dkt. 1. In his Petition, Petitioner claims that his attorney was ineffective because: (1) he failed to obtain a psychological examination of Petitioner to determine his sanity at the time of the offenses and to see if he was "fit to stand" trial after Petitioner told him that he had suffered a Traumatic Brain Injury ("TBI"); and (2) his attorney "manipulated" Petitioner into entering an *Alford* plea. Dkt. 1-1 at 2–3. The offenses underlying Petitioner's convictions occurred on April 13, 2013, *see id.* at 6, more than a year after the motor vehicle accident on March 25, 2012 that resulted in his TBI, *see* Dkt. 9 at 4.

On July 10, 2023, the Court directed Petitioner to show cause as to why his Petition was not barred by the one-year federal statute of limitations. Dkt. 4 at 2–4. In response, Petitioner filed 125 pages of copies of his medical records. *See* Dkts. 6, 9. Petitioner, however, has not submitted a brief explaining the relevance of the records, an important deficiency given that he was able to file a state habeas petition in 2018. *See* Dkt. 4 at 3–5. Instead, on July 31, 2023,

Petitioner filed a Motion for Extension of Time and Injunction to obtain "mental health and neurological examinations necessary to provide proof" of his TBI, which he seeks to "encourage" the Virginia Department of Corrections ("VDOC") to "schedule said examination[s] expeditiously." Dkt. 5 at 1; *see also* Dkt. 7.[1] Petitioner did not serve the Motion on the VDOC or any other person or entity. For the reasons stated below, the Motion for Injunction will be denied, and the Motion for Extension of Time will be granted.

**I. Injunction**

Petitioner's Motion for Injunction is, in essence, a request for discovery via an expert examination. As a habeas petitioner, "unlike the usual civil litigant in federal court, [Petitioner] is not entitled to discovery as matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). The Rules Governing § 2254 Cases authorize a district court to permit discovery "only if and only to the extent that the district court finds good cause." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000). "Good cause may be found when a petition for habeas corpus relief 'establishes a prima facie claim for relief.'" *Id.* at 814 (quoting *Harris v. Nelson*, 394 U.S. 286, 290 (1969)). Here, an injunction to establish that Petitioner sustained a TBI in 2012 is unnecessary because the medical records filed with the Court sufficiently do so. The medical records submitted also establish that Petitioner's TBI did not impede his ability to file postconviction petitions, which he did several years before he filed his federal Petition.

---

[1] Petitioner filed a single document, requesting an extension and an injunction. For ease of reference, the Clerk filed the document as two motions. Dkts. 5, 7. The first-filed document is entitled "Motion for Extension of Time[,]" Dkt. 5, and the second-filed document is entitled "Motion for Injunction[,]" Dkt. 7.

2

*A. Medical Records*

Petitioner's medical records establish that he was injured in a motor vehicle accident on March 25, 2012, diagnosed with TBI on March 30, 2012, and treated at Sentara Norfolk General Hospital until his discharge on May 24, 2012. Dkt. 9 at 3–4, 15. No further records are necessary to prove that Petitioner suffered a TBI.

Petitioner began rehabilitation therapy on May 14, 2012. *See id.* at 20.[2] His rehabilitation program involved physical therapy, occupational therapy, speech therapy, a neuropsychology evaluation, and discharge planning and family education. *See id.* at 27. By May 15, 2012, Petitioner was able to follow commands, and records indicate that his rehabilitation would "[f]ocus on gait training, transfer training, bed mobility training, balance training, ther[apeutic] ex[ercise,] and increasing activity tolerance and [range of motion]." *Id.* at 43.

Petitioner's discharge summary on May 24, 2012 states that he had "progressed well" with physical therapy, occupational therapy, and speech therapy and that he "had very mild problems with problem solving and memory." *Id.* at 16.

As stated earlier, the underlying offenses that gave rise to Petitioner's state convictions occurred on April 13, 2013, *see* Dkt. 1-1 at 6, about eleven months after his medical discharge. After receiving his November 2014 convictions, Petitioner was transferred to the VDOC on January 8, 2015. Dkt. 6 at 28. Petitioner has submitted records from evaluators and providers who saw him from March 6, 2015 to August 16, 2021 concerning his mental health after he entered the VDOC's custody. *See* Dkt. 6 at 17, 21–25, 28. The VDOC records indicate that, before entering the VDOC's custody, Petitioner had previously been treated by "Dr. Paschall" and an

---

[2] Petitioner received some rehabilitation treatment prior to May 14, 2012 while he was being treated for his head injury. See Dkt. 9 at 29–42.

3

unnamed "physician in jail[,]" but Petitioner has not provided records from Dr. Paschall or the jail. *Id.* at 24, 28.

The first VDOC record is a Mental Health Appraisal from March 6, 2015. *See id.* at 21–25, 28. When asked about "[m]edical problems or physical limitations[,]" Petitioner made the following statement about his injuries stemming from the 2012 motor vehicle accident: "I got head trauma. My right side is partially paralyzed and left side has nerve damage. I also get seizures. I need cane to walk. After my accident I have difficulty remembering some things." *Id.* at 28. Under "Mental Health Classification Code[,]" Petitioner was classified as "MH-2 Mild to Moderate Impairment[.]" *Id.* at 21. Under "Clinical Impressions[,]" the evaluator stated that Petitioner had "poor insight into his mental health[,]" and that he told the evaluator that he had "difficulty retrieving information" due to his head injury. *Id.* The evaluator observed that Petitioner was "attentive" and "able to comprehend all questions and respond in [a] timely manner." *Id.* Petitioner "denied any mental health concern at this time or in past." *Id.* The evaluator was ultimately "unable to identify any objective sign of mood or thought disorder" and that Petitioner "did not appear in any acute mental distress[.]" *Id.* Petitioner advised the evaluator that he "want[ed] to get [his] GED and pick up some trades[.]" *Id.*

Petitioner's next-in-time assessment is dated February 11, 2019. *Id.* at 29. Petitioner has provided no explanation for the four-year gap in his records. The evaluator on February 11, 2019 found Petitioner's thought processes were "[d]isorganized[,]" his speech was "[f]luent[,]" and his judgment, impulse control, and insight were all "[f]air[.]" *Id.*

4

In the next-in-time assessment on August 2, 2019,[3] the evaluator found Petitioner had "[n]o abnormal thought content[,]" perceptual disturbances, or hallucinations. *Id.* at 9. Petitioner's recent and remote memory was classified as "[a]lert[,]" he was oriented to person, place, time, and situation, he had adequate insight, and his judgment and impulse control were deemed fair. *See id.* The progress notes also reflected the following:

> [Petitioner] reported that he was in the process of filing a habeas corpus to get his case back into court. He reported that he may need a psychological evaluation and inquired about the process. He also reported that he has not filed any paperwork to date and has 2 appointments to go to the law library next week. He was encouraged to gather the information needed from the law library and if he is granted the habeas corpus the courts/judge will request the needed mental health information if any for his case. He reported he is doing ok with his mental health symptoms and is currently stable.

*Id.*

The next progress notes—from January 7, 2020, February 5, 2020,[4] March 9, 2020, and March 30, 2020—provide no evidence of any significant change in Petitioner's mental condition, and only mention his TBI diagnosis as a historical reference. *See id.* at 11–14. Specifically, on January 7, 2020, Petitioner did not report any mental health issues and said he was "okay." *Id.* at 12. On March 9, 2020, he reported no mental health issues, and none were noted. *See id.* at 14. On March 30, 2020, Petitioner stated he was doing "alright[,]" "good[,]" and had no mental health complaints. *Id.* at 13.

Seven later-in-time records from 2020 observed the following:

- On April 28, Petitioner stated that he was "alright" and "good" and that he had no mental health issues. *Id.* at 16. The evaluator observed "zero" mental health

---

[3] There is a document dated March 25, 2019 that appears to be only a renewal for a medication. *See id.* at 26. Another document dated November 6, 2019 is largely illegible, but appears to also concern medication. *See id.* at 10.

[4] The February 5, 2020 record is handwritten and does not provide any insight into Mr. Fitchett's mental health, aside from mentioning his TBI from 2012 in passing. *See id.* at 11.

symptoms and had no concerns regarding Petitioner. *Id.*

- On May 6, Petitioner reported issues with his cellmate and stated that he felt "anxious to kill." *Id.* at 15. Arrangements were made to transfer Petitioner to a new cell. *See id.*

- On July 29, Petitioner discussed his offenses and "indicated [that] he d[id] not recall the incident or the specific details related to his crime, other than he was intoxicated at the time he committed the crime. Therefore, he stated he 'took the Alford plea.'" *Id.* at 4. Petitioner also reported that the Innocence Project of Washington, DC was "working on his case." *Id.* The evaluator found his insight was "[a]dequate" and his judgment and impulse control were both "[g]ood[.]" *Id.*

- On August 5, Petitioner alleged that he had had two seizures that resulted in him spitting on an officer and being charged with an offense. *See id.* at 5. He also received a charge for putting something "in the lock last week." *Id.*

- On September 30, Petitioner stated that he was "good" and that he had "no complaints." *Id.* at 6. The evaluator found Petitioner's insight was excellent and his judgment and impulse control were good. *See id.*

- On October 27, Petitioner complained about his cellmate; but "[n]o apparent distress [was] observed." *Id.* at 7. The evaluator found Petitioner's insight was adequate and his judgment and impulse control were good. *See id.*

- On November 4, Petitioner complained about his cellmate and felt "vulnerable[.]" *Id.* at 8. Petitioner's sister's boyfriend was stabbed to death in September 2020. *See id.*

Five records from 2021 do not indicate any mental impediment:

- On January 4, "[n]o mental health issues [were] noted or reported[.]" *Id.* at 1.

- On January 22, Petitioner reported that he was "stressed" because of problems with his cellmate. *Id.* at 30. The evaluator noted he was "[a]lert[,]" did not have abnormal thought content, and became "more comfortable" as staff explained the services available to him. *Id.*

- On March 3, Petitioner reported "high levels of anxiety and paranoia" because he perceived himself as "weak" and was afraid of being preyed upon. *Id.* at 20. He reported no thoughts to harm himself or anyone else. *See id.*

- On May 11, the evaluator noted that Petitioner had "suffered from a TBI, but [wa]s not prescribed psychotropic medications. [Petitioner] display[ed] no evidence of mental health issues. His mood was entirely normal with no signs of depression or mood elevation." *Id.* at 19.

- On August 16, the evaluator noted that Petitioner was "not currently prescribed psychotropic medications, and has not been on psychotropic medications since 2015. [Petitioner] display[ed] no evidence of mental health issues. His mood was entirely normal with no signs of depression or mood elevation." *Id.* at 17.

In the most recent report submitted, from August 16, 2021, the evaluator indicated that Petitioner's mental health had improved and his mental health classification should be "lowered [from MH-2, "Mild to Moderate Impairment"] to MH-1 ["Minimal Impairment"]" because Petitioner was "not currently on psychotropic medications and has remained stable with no reported issues." *Id.*

*B. Analysis*

As stated in an earlier Order, *see* Dkt. 4, Petitioner's petition is untimely under 28 U.S.C. § 2244(d)(1)(A), which provides that the federal one-year limitations period runs from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000) ("[T]he [Antiterrorism and Effective Death Penalty Act] provides that the one-year period does not commence until the latest of the date when judgment on direct review 'became final' or 'the expiration of the time for seeking such review.'" (quoting 28 U.S.C. § 2244(d)(1)(A))). On November 17, 2014, Petitioner was sentenced in state court. *See Commonwealth v. Fitchett*, Nos. CR13000129-03 to -04 (Va. Cir. Ct. filed July 8, 2013).[5] Petitioner's convictions became final on December 17, 2014, thirty days after the entry of the circuit court's final order. *See* Va. Sup. Ct. Rule 5A:6(a) (requiring a notice of appeal to be filed within thirty days of the entry of final judgment). The current federal habeas petition was deemed

---

[5] The online Virginia Courts Case Information System confirms Petitioner's convictions and the relevant dates. *See* Virginia's Judicial System, http://www.courts.state.va.us/ (last visited Nov. 29, 2023) (Case Status and Information page. Circuit Court, Northampton Circuit Court, search "Fitchett, Durell"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." (quotation omitted)) (collecting cases).

filed on December 22, 2021, the earliest that Petitioner could have filed his petition.[6] Therefore, the petition is untimely under § 2244(d) unless Petitioner can establish that the statute of limitations does not apply or should otherwise be tolled. *See Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002) (requiring "the district court to give [a] *pro se* § 2254 petitioner prior notice and an opportunity to respond" before a *sua sponte* dismissal under § 2244(d)). Here, because no state habeas petition was filed until after the statute of limitations had lapsed, the only potential tolling is equitable tolling.[7]

In its July 10, 2023 Order, the Court detailed why equitable tolling was not warranted:

> Petitioner fails to explain the steps he took to diligently pursue his rights between December 2014 and December 22, 2021, the date he filed his previous federal petition. Petitioner has provided no records to substantiate his claim that he had a traumatic brain injury at the time of trial, including the injury's nature and circumstances, any treatment he received, or whether he underwent any examination at trial. More than three years passed between December 17, 2014, the date that Petitioner's convictions became final, and December 3, 2018, the date that Petitioner filed his first state habeas petition. Furthermore, over two years

---

[6] Petitioner filed a federal habeas petition on or about December 22, 2021, *see Fitchett v. Jones*, No. 1:22-cv-38, Dkt. 1 at 16, which was dismissed without prejudice on May 5, 2022 because he had not paid the filing fee, *see Fitchett v. Jones*, No. 1:22-cv-38, Dkt. 10. It was later determined that Petitioner had sent a filing fee for *Fitchett v. Jones*, No. 1:22-cv-38, but it was received well past the time allotted. *See Fitchett v. Jones*, No. 1:22-cv-38, Dkt. 15. To prohibit any prejudice to Petitioner, this petition will be deemed to relate back to December 22, 2021, the date he filed the previous federal petition.

[7] The state habeas statute of limitations provides petitioners with two years from the date of judgment or one year after the conclusion of direct appeal, whichever is later. *See* Va. Code § 8.01-645(A)(2). For Petitioner, the state habeas statute of limitations expired on December 17, 2016, two years after his final judgment on December 17, 2014. The first state habeas petition was not filed until December 3, 2018, *see Fitchett v. Dep't of Corrs.*, No. 181700 (Va. filed Dec. 3, 2018), which negates the possibility of statutory tolling because a petition was not filed until after the one-year federal statute of limitations had already expired. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998))); *see also Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("[E]ven 'properly filed' state-court petitions must be 'pending' . . . to toll the limitations period." (quoting *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000))).

passed between the first state habeas petition's dismissal on May 15, 2019 and Petitioner's filing of the federal habeas petition on December 22, 2021.

Dkt. 4 at 4–5.

After reviewing the medical records submitted, the Court finds that Petitioner has not submitted any evidence that the TBI that he suffered in 2012 impeded his ability to file a timely federal habeas petition, or that equitable tolling is applicable. Consequently, the Court finds no good cause to issue an injunction or an order for a mental examination. To the contrary, the records Petitioner submitted establish that while he did suffer a TBI in 2012, that injury has not impacted his mental abilities in a significant manner. He filed a state habeas petition in 2018 and was working on another habeas corpus petition before August 2, 2019. *See* Dkt. 6 at 9. In the four months since the Court's July 10, 2023 Order, Petitioner has not submitted anything to establish that he requested, much less obtained, additional medical evaluations or records. Neither has Petitioner identified the existence of an impediment that prevented him from filing his federal habeas petition in a timely manner. In deference to Petitioner's *pro se* status and to provide him with sufficient time to submit any other materials he may have accumulated in the last four months, the Court will grant him a thirty-day extension to do so. Accordingly, it is hereby

**ORDERED** that Petitioner's Motion for an Injunction (Dkt. 7) be and is **DENIED**; and it is further

**ORDERED** that Petitioner's Motion for an Extension of Time (Dkt. 5) be and is **GRANTED**; and it is further

**ORDERED** that this Petition will be dismissed as barred by the statute of limitations unless, within **THIRTY (30) DAYS FROM THE DATE OF THIS ORDER**, Petitioner contests the application of the one-year statute of limitations or establishes that he is entitled to equitable tolling. To establish this entitlement, Petitioner must present affidavits (sworn statements subject

9

to the penalty of perjury) or other material contesting the application of the statute of limitations pursuant to 28 U.S.C. § 2244(d); and it is further

**ORDERED** that Petitioner's failure to comply with any part of this Order within **THIRTY (30) DAYS FROM THE DATE OF THIS ORDER,** or failure to notify this Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Fed. R. Civ. P. 41(b).

The Clerk is directed to send a copy of this Order to Petitioner.

Entered this 18th day of January, 2024.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge